FELIX J. MCSHANE, JR., APPELLEE, V. DOUGLAS COUNTY,
APPELLANT.*

FILED APRIL 3, 1914. No. 18,260.

**Statutes: CONSTRUCTION:. COMPENSATION OF SHERIFFS.** The question
presented here was argued and decided in *McShane v. State,* 93
Neb. 54. The legislature has been in session since the decision,
and, having made no change in or amendment to the statute, the
construction given therein is adhered to.

APPEAL from the district court for Douglas county:
GEORGE A. DAY, JUDGE. *Affirmed.*

*Charles Haffke* and *Myron L. Learned,* for appellant.

*Arthur F. Mullen, contra.*

*Albert W. Jeffries, amicus curiae.*

LETTON, J.

The plaintiff is the sheriff of Douglas county. He filed
with the county clerk a claim against the county for feed-
ing prisoners confined within the county jail from Febru-
ary 6, 1913, to February 28, 1913—3,045 days, at 50 cents
a day, making a total of $1,522.50, upon which he credited
for gas and water $42.43, leaving a net claim of $1,480.07.
The claim was rejected by the board of county commission-
ers. Shortly afterwards he filed a petition in the district
court based upon the same claim and for the same amount.
The defendant answered, pleading that chapter 53, laws
1907, purporting to amend section 5, ch. 28, Comp. St. 1905,
was void; that it violated section 11, art. III of the consti-
tution; that a portion of said chapter 53 had been declared
unconstitutional by the supreme court, and that said por-
tion was a material inducement to the adoption of the re-
mainder, and that the legislature would not have passed the
law had the part rejected not been included therein; that
the sheriff's fees are fixed by section 5, ch. 28, Comp. St.
1905; that the meals furnished by the sheriff were not

---

*On rehearing, judgment of district court reversed. See opinion,
96 Neb. —.

worth to exceed 7½ cents a meal; that defendant has equipped a new jail with all the modern conveniences, and that the only expense incurred and service rendered by the plaintiff had been in the supplying, preparing and serving food to the prisoners, using the rooms and equipment of the defendant. After a trial, the district court found in favor of the plaintiff for the whole amount claimed, less a small deduction for the use of defendant's kitchen and appliances. Defendant appeals and assigns as error, first, that the court erred in holding that section 1, ch. 53, laws 1907, fixed the fees for feeding prisoners in Douglas county; second, that the plaintiff's petition did not state a cause of action; third, that the court erred in excluding evidence of the nature, quality, quantity and cost of the meals furnished, and in rendering judgment in the absence of such evidence.

Previous to April, 1907, the statute governing the compensation of sheriffs for feeding prisoners was as follows: "For boarding prisoners per day, not exceeding seventy-five cents per day, nor more than $3.50 per week when the prisoners are confined more than six days." Section 5, ch. 28, Comp. St. 1905. The legislature of 1907 passed an act amending the foregoing section so as to read as follows: "Section 5. (Sheriff.) Serving capias with commitment or bail bond and return, one dollar.   *   *   *   For boarding prisoners, fifty cents per day; provided, that in counties having by the last preceding national or state census a population in excess of one hundred thousand (100,000) the sheriff shall receive for boarding prisoners, including jail supplies, thirty-nine cents per prisoner per day until January 1, 1908, and it shall be the duty of the board of county commissioners to advertise on or before December 1, 1907, and annually thereafter, for proposals for furnishing meals to prisoners in the county jail according to specifications set forth in said advertisement, and on or before the first day of January in each year to contract with the lowest and best bidder for feeding prisoners in the county jail." The validity of the provisions authorizing the board of county commissioners to contract with the lowest bidder

for feeding prisoners in the county jail was assailed in the case of *State v. McShane,* 93 Neb. 46, for the reason that such a provision was not within the title either of the original or the amendatory act, and was not germane to the subject of either. This view was taken by the court, and it was said in the opinion: "A careful reading of the amendatory act satisfies us that, after eliminating the unconstitutional portion of it, the remainder of the act is complete in itself, and capable of enforcement." In *McShane v. State,* 93 Neb. 54, which was argued and submitted with *State v. McShane,* 93 Neb. 46, it appeared that the sheriff filed a claim with the state auditor for the board of a state prisoner for four days, at 50 cents a day. The state auditor allowed the claim to the extent of 19 cents a day which was the amount fixed in a contract between the county board of Douglas county and the firm which then held the contract for feeding the prisoners. The district court also held that this amount was all that plaintiff was entitled to, but its judgment was reversed by this court, which held that the question in the case was identical with the one determined in *McShane v. State,* 93 Neb. 46, and that the sheriff "was clearly entitled to the compensation mentioned in that part of chapter 53 remaining in force, by which it is declared that the sheriff shall receive the sum of 50 cents a day for furnishing meals to such prisoners." The correctness of our decision in the latter case is now directly challenged.

A stipulation was filed in *McShane v. State,* 93 Neb. 54, that the question in the two cases was identical, and the opinions came down at the same time. Appellant now argues that, on account of this stipulation, the opinion in the latter case must have been rendered under a misapprehension of the question involved, and that, since Douglas county was not a party to the suit, it is not bound by the decision. Of course, the county, not being a party to the suit, is not bound by the judgment, but it is equally bound with all other persons by the principles of law announced. But, in the brief of the county of Douglas in the former case, it was argued that "That clause is: 'For boarding

prisoners 50 cents per day.' * * * And the provision for competitive bids are complete only when taken together, and must stand or fall together, as the provision for competitive bids in counties to which it applies was the efficient and moving cause for the enactment of the amendment, and particularly that portion which fixed the amount for smaller counties." The fact that the legislature of 1907 at the same session enacted chapter 54, laws 1907, which provides salaries for sheriffs in full compensation for their services, in lieu of the fees previously received, was also set forth as a reason for the legislation, and it was said that it was not intended that sheriffs would make a profit by the feeding of prisoners; that it was rumored that in Douglas county the sheriff was making a large profit under the price of 35 cents a day, which had been fixed by the county commissioners under the former statute, and that the object of both of these statutes was to place the office of sheriff upon a definite salary basis, and to provide that the amount paid him for feeding the prisoners should be as nearly as possible the actual cost thereof. It is said also: "The amount would not have been fixed at 50 cents unless the first proviso was also enacted, because the prisoners were then being fed in the counties the proviso applied to for 39 cents a day;" and that the first clause and the first proviso was each an inducement for enacting the other, and both must stand or fall together. Speaking of Mr. McShane, it is said: "He does not want the law to stand as it was prior to the amendment of 1907, under which the amount to be paid to the sheriff for feeding prisoners was determined by the county commissioners. He only wants that part of the amendment which provides that the amount to be paid for feeding prisoners shall be determined by the county commissioners, by competitive bids submitted to it, declared void."

These excerpts from the brief clearly show that the questions raised in this case were expressly raised and decided in the former case, and that, if any relief is to come, it must come through the legislature. The legislature has been in

session since the decision in the former cases, and has taken
no steps to change the rule of the decisions.

We are not inclined to interfere with their prerogative.
For these reasons, the judgment of the district court is

Affirmed.

Fawcett, J., dissents.

Hamer, J., dissenting.

I am not quite able to agree with the majority opinion.
It is said in the syllabus of that opinion that the identical
questions presented were presented and argued in *Mc-
Shane v. State*, 93 Neb. 54, and that this case is controlled
by the decision in that one.   On referring to that case I
find it stated in the syllabus that "The question decided
therein was identical with the one determined in *State v.
McShane, ante*, p. 46."   On turning to that case, I find the
statement in the syllabus that "So much of chapter 53, laws
1907, as authorizes the county board of counties having
more than 100,000 inhabitants to contract with the lowest
and best bidder for feeding prisoners in the county jail is
violative of the provisions of section 11, art. III of the con-
stitution."   It may be well to run over these cases, with a
view to ascertaining what has been decided.

In the first case (*State v. McShane* 93 Neb. 46) it is said
that the relator brought the action in the district court for
Douglas county for a writ of mandamus to compel the re-
spondent as sheriff of that county, to allow the relator and
the firm of Garnipee & Flanagan admission to the jail of
Douglas county in order to furnish meals to the prisoners
confined therein for and during the year 1912, under a con-
tract entered into for that purpose between the county
commissioners and said firm under the provisions of sec-
tion 5, ch. 28, Comp. St. 1905, as amended by chapter 53,
laws, 1907.   The respondent filed an answer to the alterna-
tive writ, which the district court held stated no defense,
and the writ of mandamus was allowed as prayed, and the
respondent appealed.   The appellant in that case con-
tended that so much of the amendatory act of 1907 as pro-
vided that "it shall be the duty of the board of county com-

missioners to advertise on or before December 1, 1907, and
annually thereafter, for proposals for furnishing meals to
prisoners in the county jail according to specifications set
forth in said advertisement, and on or before the first day
of January in each year to contract with the lowest and
best bidder for feeding prisoners in the county jail," is
unconstitutional and void. It was the contention in that
case that the part referred to was unconstitutional because
it was in violation of section 11, art. III of the constitu-
tion, providing: " 'No bill shall contain more than one
subject and the same shall be clearly expressed in its title.'
Second. The amendatory act is broader than its title.
Third. The act, both directly and by implication, amends
several sections of the general laws of the state relating to
the powers and duties * * * of the sheriff, without ex-
pressly repealing such sections and re-enacting them.
Fourth. That the act is local and special legislation, and
is violative of section 15, art. III of the constitution, which
provides: 'The legislature shall not pass local or special
laws. * * * Where a general law can be made applicable,
no special law shall be enacted.' On the first proposition
it may be said that the act in question purports to amend
section 5, ch. 28, Comp. St. 1905, entitled 'Fees,' and, in so
far as it treats of that subject, it might be said to be ger-
mane to the section amended. It appears, however, that the
act provides that for boarding prisoners the sheriff shall
receive 50 cents per day; 'provided, that in counties having
by the last preceding national or state census a population
in excess of 100,000 the sheriff shall receive for boarding
prisoners, including jail supplies, 39 cents per prisoner per
day until January 1, 1908, and it shall be the duty of the
board of county commissioners to advertise on or before
December 1, 1907, and annually thereafter, for proposals
for furnishing meals to prisoners in the county jail accord-
ing to specifications set forth in said advertisement, and on
or before the first day of January in each year to contract
with the lowest and best bidder for feeding prisoners in the
county jail; provided, further, that the sheriff shall, on
the first Tuesday in January, April, July and October of

McShane v. Douglas County.

each year, make a report to the board of county commissioners or supervisors under oath, showing the items of fees, except mileage, collected or earned, from whom, at what time, and for what service, and the total amount of fees collected or earned by such officer since the last report, and also the amount collected or earned for the current year, and he shall then pay all fees earned to the county treasurer.' It must be said that section 5, ch. 28, Comp. St. 1905, dealt exclusively with the subject of sheriff's fees, and fixed the amount of fees he was to receive for official acts performed by him, that that part of the proposed amendment which is claimed to be unconstitutional does not deal with the subject of fees but deals with matters entirely foreign to the subject matter of the original section, and refers specifically to the powers and duties of the county board. It attempts to take the control of feeding prisoners away from the sheriff and place it with the county board, which is a matter regulated by a distinct section of the statute. The subjects are not closely related, and are not germane to each other." Many cases are then cited, with a view to showing the correctness of the contention made. We quote from the opinion. "It may be fairly said that the part of the section above quoted was not within the title to either the original or amendatory acts, and was not germane to the subject of either of those acts. We are, therefore, of opinion that so much of the amendatory act as refers to the powers and duties of the board of county commissioners is unconstitutional and void. * * * A careful reading of the amendatory act satisfies us that, after eliminating the unconstitutional portion of it, the remainder of the act is complete in itself, and capable of enforcement. It has been repeatedly held that, if the unconstitutional and constitutional provisions of an act can be separated and leave the remainder of it capable of enforcement, the unconstitutional provisions will be stricken out, and the constitutional provisions will be preserved." Here follow citations. It is then said: "From the foregoing, it follows that the contract upon which the

95 Neb. 45

relator bases its right to the writ of mandamus was not authorized by law, and the district court erred in overruling and disregarding the respondent's answer and awarding the writ as prayed." There is then a provision in the opinion for an order that the judgment of the district court be reversed and the action dismissed.

The second McShane case being *McShane v. State*, 93 Neb. 54, is a second reversal of the judgment of the district court, and is said to cover the same question, except that the item under consideration was: "Board of prisoners from date of conviction, August 27, 1912, to August 30, 1912, 4 days, at 50 cents a day, $2." Time seems to be the main difference. The county is always Douglas county, except that in the last case (*McShane v. State*, 93 Neb. 54), there was a trial in the district court for Lancaster county, but it was the consideration of an appeal from a judgment of the district court sustaining the action of the auditor of public accounts in disallowing a portion of a claim presented by the plaintiff in that case to the auditor for allowance against the state. It was for "board of prisoners from date of conviction, August 27, 1912, to August 30, 1912, 4 days, at 50 cents a day, $2." This particular claim was allowed "at only 19 cents a day." In that case it was stipulated that the question presented for determination was identical with the one decided "in *State v. McShane*, 93 Neb. 46, and the two cases have been consolidated and argued as one." In that case it was said that "the provision contained in chapter 53, laws 1907, by which the legislature attempted to authorize the county commissioners in counties having more than 100,000 inhabitants to let contracts for feeding prisoners in the county jail to the lowest and best bidder, is unconstitutional and void." It was said, therefore, that, as the plaintiff had "furnished the meals in question to a state's prisoner, * * * he was clearly entitled to the compensation mentioned in that part of chapter 53 remaining in force, by which it is declared that the sheriff shall receive the sum of 50 cents a day for furnishing meals to such a prisoner." It will be seen that the legislature adopted the sum of 19 cents a day,

and that the court, by declaring the act of the legislature
unconstitutional, has made 50 cents a day possible, some-
thing that the legislature did not contemplate when it re-
duced the price to 19 cents a day. Unless we have to do so,
I do not wish to substitute the will of this court in lieu of
the intention of the legislature. It is the legislature which
has power to fix the compensation. I do not want to fix it.
It is true that the result is the effect of a ruling. The
ruling knocks out and nullifies the intention of the legisla-
ture, and revives the fee fixed at a former and different
time. The instant case proposes to follow the cases cited
and make the sum 50 cents a day. That may not be ex-
orbitant, but it is not the will of the legislature that such
a sum shall be paid, and I do not want the supreme court of
our state to be encumbered with legislative duties and re-
sponsibilities, which it will be unless it is very careful how
it handles this case.

In the instant case it is said that the claim is 3,045 days
at 50 cents a day. There was a small credit for gas and
water of $42.43. The claim in the majority opinion is
alleged to be "a net claim of $1,480.07." "The defendant
answered, pleading that chapter 53, laws, 1907, purporting
to amend section 5, ch. 28, Comp. St. 1905, was void; that
it violated section 11, article III of the constitution; that
a portion of said chapter 53 had been declared unconstitu-
tional by the supreme court, and that the said portion was
a material inducement to the adoption of the remainder,
and that the legislature would not have passed the law had
the part rejected not been included therein; that the
sheriff's fees are fixed by section 5, ch. 28, Comp. St. 1905;
that the meals furnished by the sheriff were not worth to
exceed 7½ cents a meal; that defendant has equipped a
new jail with all the modern conveniences, and that the
only expense incurred and service rendered by the plaintiff
had been in the supplying, preparing and serving food to
the prisoners, using the rooms and equipment of the de-
fendant." The majority opinion in the instant case recites
the fact that "previous to April, 1907, the statute govern-
ing the compensation of sheriffs for feeding prisoners was

as follows: 'For boarding prisoners per day, not exceeding seventy-five cents per day, nor more than $3.50 per week when the prisoners are confined more than six days.' Section 5, ch. 28, Comp. St. 1905." It is alleged in the majority opinion that the legislature of 1907 passed an act amending the foregoing section so as to read: "Section 5. (Sheriff.) Serving capias with commitment or bail bond and return one dollar. * * * For boarding prisoners, fifty cents per day; provided, that in counties having by the last preceding national or state census a population in excess of 100,000 the sheriff shall receive for boarding prisoners, including jail supplies, thirty-nine cents per prisoner per day until January 1, 1908, and it shall be the duty of the board of county commissioners to advertise on or before December, 1907, and annually thereafter, for proposals for furnishing meals to prisoners in the county jail according to specifications set forth in said advertisement, and on or before the first day of January in each year to contract with the lowest and best bidder for feeding prisoners in the county jail." It is said: "The validity of the provisions authorizing the board of county commissioners to contract with the lowest bidder for feeding prisoners in the county jail was assailed in the case of *State v. McShane* 93 Neb. 46, for the reason that the provision was not within the title either of the original or the amendatory act, and was not germane to the subject of either. This view was taken by the court and it was said in the opinion: * * * 'After eliminating the unconstitutional portion of it, the remainder of the act is complete in itself, and capable of enforcement.' "

It may be said with a good deal of force that, if this court sees fit to do so, it may say that part of an act is unconstitutional, and that the part of the act which is unconstitutional is no inducement to the passage of that part of the act which is constitutional, and it may further say that the part remaining is complete in itself, and capable of being enforced. It is the opinion of the writer that we are on very dangerous ground whenever a court condemns part of an act as unconstitutional, and then proceds to say that

that part was no inducement to the passage of the other part, and that the part remaining is to be considered complete and capable of enforcement by itself. The danger is that, if the court does not like what is declared unconstitutional, it will have no trouble in rejecting it, but, if it likes what is left, it will want to keep it, and there is no rule by which it can be told with certainty what the opinion of the court will be. It may like what is left and, if so, it will retain it. If the court desires to defeat the whole act, it is so easy for it to say that the unconstitutional part was an inducement to the passage of the other part. If it wants to keep the other part, it will say that the unconstitutional part was no inducement. The whole matter is pure speculation. It will dislike what it declares unconstitutional, and, if so, it will put it out. This doctrine is objectionable, no difference how many times this court in the past has said that it could be resorted to. The fact is one of personal preference of the judge or judges which determines their action. The attempted rule is as fleeting and intangible as the end of a rainbow. This sort of rule makes the court a lawmaker. It gives it legislative powers. Whenever it concludes to go in and nullify part of an act upon the ground that it is unconstitutional, it can keep the remainder, or put it out, just as it pleases. If it puts the whole act out, the effect is to revive a discarded law, like the 50 cents a day in this indentical case. Here is a case where the legislature contemplated one thing and attempted to do it. It declared for the lowest bidder. The supreme court declares for a law that the legislature had pronounced repealed. It may be argued upon humanitarian grounds that it is a bad thing to let the contract to the lowest bidder. It may be said that he would fill the prisoners with diluted and dangerous food. But that is a matter which might be met in some other way; perhaps by the employment of an intelligent and humane inspector.

Of course, it can be further said that it might be made the duty of the sheriff to run a boarding house of this size in a clean, capable and efficient manner, so that the prisoners would get good food. The sheriff should be pro-

vided for; if not by fees, then by a liberal salary; but our court should not be required to render any decision likely to be misunderstood as a juggling or sleight of hand performance. Any one capable of analyzing the cases referred to might come to that conclusion. There is no. way to avoid this sort of thing as long as the whim of the individual may become the law of the court.